DMP:SK/JMH
F.#2015R00517

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -                         Magistrate Docket No. 18-606

RUSLAN MARATOVICH ASAINOV,

              Defendant.

- - - - - - - - - - - - - - - - -X

## THE GOVERNMENT'S DETENTION MEMORANDUM

                                                                RICHARD P. DONOGHUE
                                                                 United States Attorney
                                                                 Eastern District of New York

Douglas M. Pravda
Saritha Komatireddy
J. Matthew Haggans
Assistant U.S. Attorneys
(Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 2

I. The Islamic State of Iraq and al-Sham ............................................................................ 2

II. The Defendant Fought for ISIS in Syria ......................................................................... 4

III. The Defendant Became an ISIS Emir and Trained Others in the Use of Weapons ....... 5

IV. The Defendant Attempted to Recruit Another Individual to Fight for ISIS in Syria ..... 5

V. The Defendant's Arrest and Transfer .............................................................................. 5

ARGUMENT ................................................................................................................................ 6

I. Legal Principles ............................................................................................................... 6

II. The Defendant Is a Danger to the Community ............................................................... 7

III. The Defendant Poses a Risk of Flight ............................................................................. 8

CONCLUSION ........................................................................................................................... 10

PRELIMINARY STATEMENT

The defendant, Ruslan Maratovich Asainov, is a United States citizen charged by complaint with providing and attempting to provide material support and resources to the Islamic State of Iraq and al-Sham ("ISIS"). The defendant is an ISIS "emir," or chief. For approximately the past five years, he has fought for ISIS in Syria and supported its cause by becoming an ISIS sniper, training other ISIS fighters in the use of weapons, and attempting to recruit another individual to travel from the United States to Syria to fight for ISIS. The defendant was detained overseas by the Syrian Democratic Forces ("SDF") and recently transferred to U.S. custody. On July 18, 2019, the defendant arrived at John F. Kennedy International Airport in Queens, New York. For the reasons set forth herein, there are no conditions or combination of conditions that would reasonably safeguard the community or prevent the defendant from fleeing this prosecution. Therefore, the Court should enter a permanent order of detention pending trial.

STATEMENT OF FACTS

The defendant is charged by complaint with providing and attempting to provide material support to ISIS. See generally Complaint.[1] The statutory maximum sentence is 20 years' imprisonment. See 18 U.S.C. § 2339B(a)(1).

I.   The Islamic State of Iraq and al-Sham

Since 2013, ISIS supporters have claimed credit for numerous terrorist activities, including multiple attacks against Americans in the United States and against Westerners abroad, and have publicly expressed a desire to continue to target and attack the U.S. and the West. ISIS supporters have claimed responsibility for several attacks in the United States, including: the May 2015 shooting in Garland, Texas, at an exhibition featuring cartoons of the Prophet Mohammed; the December 2015 shooting in San Bernardino, California, at the Inland Regional Center; and the June 2016 shooting in Orlando, Florida, at the Pulse nightclub.

ISIS and its supporters have also claimed responsibility for many violent attacks in Europe and South Asia, including: the November 2015 shootings and suicide bombings in Paris, France, at the Bataclan concert hall, a sports stadium, and several restaurants; the July 2016 truck attack in Nice, France during Bastille Day celebrations; the December 2016 truck attack in Berlin, Germany at a Christmas market; the May 2017 suicide bombing in Manchester, United Kingdom at a concert; the August 2017 van attack in

---

[1] The government has submitted, under separate cover, a motion for an order to unseal a redacted version of the Complaint.

2

Barcelona, Spain; an August 2018 suicide bombing in Kabul, Afghanistan; and the Easter Sunday 2019 series of suicide bombings in Sri Lanka.

ISIS has released multiple audio and video messages purporting to be from its self-proclaimed leader, Abu Bakr al-Baghdadi, advocating continued violence by ISIS supporters.  On June 29, 2014, ISIS released an audio recording declaring a "caliphate" consisting of territory under ISIS control in Iraq and Syria, and stating that Baghdadi would be the "caliph" or "leader for Muslims everywhere."  On July 5, 2014, ISIS released a video recording in which Baghdadi urged Muslims from across the world to "do jihad in the cause of God, incite the believers and be patient in the face of this hardship."  On May 14, 2015, ISIS released an audio recording in which Baghdadi urged Muslims to take up arms on behalf of ISIS by either traveling to the Middle East to fight for ISIS or launching attacks wherever they were.  On September 29, 2017, ISIS released an audio recording in which Baghdadi again urged his followers to continue to attack the U.S. and its allies, saying: "Carry on your jihad and your blessed operations.  Let not the crusaders enjoy life in their homelands while your brothers are subjected to bombardment and destruction."  As recently as April 2019—just weeks after an allied campaign ousted ISIS from a holdout in Baghouz, Syria—ISIS released an eighteen-minute video from al-Baghdadi, in which he stated, among other exhortations, that "jihad continues until judgment day"; congratulated ISIS cells in Libya, Burkina Faso and Mali on then-recent attacks or pledges of allegiance to ISIS; claimed that the Sri Lanka Easter Sunday bombings were "in revenge"; and exhorted ISIS followers to "drain their enemies of all their human, military, economic and logistical capabilities."

3

These activities are part of ISIS's broader goal of forming an Islamic state or "caliphate." At various times over the past few years, ISIS has controlled territory in Syria, Iraq, and Libya. ISIS supporters also maintain a presence in other countries. ISIS is a designated Foreign Terrorist Organization.

II.     The Defendant Fought for ISIS in Syria

The defendant is a 42-year-old former resident of Brooklyn, New York, who was born in Kazakhstan and became a naturalized citizen of the United States. In late 2013, the defendant travelled on a one-way ticket from John F. Kennedy International Airport to Istanbul, Turkey, a common transit point for entry into Syria. He subsequently entered Syria and became an ISIS fighter and sniper. The defendant periodically sent messages and photographs from the battlefield, including photographs of himself and other ISIS fighters in combat gear. For example, in August 2014, the defendant sent a message in which he confirmed that ISIS was the "real deal" and stated that his "faith in Islam had been renewed since arriving in Syria." In October 2014, the defendant circulated a photograph depicting three dead soldiers, at least one of whom wore a patch identifying him as an ISIS fighter. The defendant described the dead soldiers as "young men, friends, who died in the last battle," adding that "we are dying here." The defendant sent other messages in which he claimed that it was "normal" for him to be carrying a rifle and in which he tried to raise funds to purchase a scope for his rifle. By early 2015, the defendant was touting his allegiance to ISIS and threatening another individual that ISIS "will fucking kill you" and that the individual should be "fucking scared for the rest of your life." In another message, the defendant exclaimed, in reference to ISIS, "we are the worst terrorist organization in the world that has ever existed" and stated that he wished to die on the battlefield.

4

III.     The Defendant Became an ISIS Emir and Trained Others in the Use of Weapons

Over time, the defendant rose through the ranks to become an ISIS "emir" in charge of training other ISIS members in the use of weapons.  Based on an interview with at least one other individual who provided material support and resources to ISIS during part of the same time period as the defendant, the defendant trained as a sniper and eventually attained a high enough rank within ISIS's sniper corps that ISIS fighters and supporters referred to him as a sniper "emir."  The defendant further helped to establish training camps for ISIS fighters to train the fighters in the use of weapons.

IV.     The Defendant Attempted to Recruit Another Individual to Fight for ISIS in Syria

The defendant also attempted to recruit another individual to travel from the United States to Syria to fight for ISIS.  Unbeknownst to the defendant, the individual was a confidential informant for the New York City Police Department ("the CI").  Over the course of 2014 and 2015, the defendant maintained a relationship with the CI.  During that time, the defendant tried to persuade the CI to come to Syria.  The defendant claimed that because the CI was fluent in English, he would be particularly suited to support ISIS's media operations.  The defendant further stated that he would provide the CI with an escort from Turkey into Syria, and ISIS would provide the CI with a job, housing, food, and a stipend once in Syria.

V.     The Defendant's Arrest and Transfer

On July 18, 2019, the defendant was transferred to the United States.  The defendant was detained overseas by the SDF and arrived in custody at John F. Kennedy International Airport in Queens, New York.  The defendant will be presented a 2:00 p.m. today for his initial appearance.

ARGUMENT

I.     Legal Principles

Federal law requires that a defendant must be detained pending trial if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  A finding of dangerousness must be supported by clear and convincing evidence; a finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

Courts consider several factors in making the determination of whether detention is appropriate: (i) the nature and circumstances of the offense charged, including specifically whether the offense is a federal crime of terrorism; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, community ties, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual.  See 18 U.S.C. § 3142(g).  In making this determination, the Court is entitled to rely on evidence presented by proffer.  See United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000).

For certain offenses, including the offense charged in the Complaint, the law presumes that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community.  18 U.S.C. § 3142(e)(3).  This presumption may be rebutted by the defendant, provided the defendant is able to present evidence that he is neither a danger nor a risk of flight.  See United States v. Mercedes, 254 F.3d 433, 436

6

(2d Cir. 2001). Even upon such a showing, however, the presumption in favor of detention "does not disappear entirely, but remains a factor to be considered among those weighed[,]" id., because it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial" and "represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." United States v. Stone, 608 F3d 939, 945-946 (6th Cir. 2010) (internal quotation marks and citation omitted) (ellipsis in original).

II.     The Defendant Is a Danger to the Community

As set forth above, the law presumes that detention is appropriate based on the offense charged. Even if there were not such a presumption, the nature and circumstances of the charged offense—fighting for ISIS in Syria—as well as the strength of the evidence, the history and characteristics of the defendant, and the seriousness of the threat presented by him, see 18 U.S.C. § 3142(g), all support his detention as a danger to the community.

It is evident that the defendant poses a danger to the community given that for several years, he has been an active, armed, senior member of ISIS, a pestilent and violent terrorist organization that has claimed numerous murderous attacks worldwide. The evidence uncovered during the government's investigation demonstrates that the defendant has embraced an extremely violent ideology that advocates the committing of violent jihad in the United States and abroad. See United States v. Farah, No. 15-MJ-312(2), 2015 WL 2353075, at *4 (D. Minn. May 15, 2015) (18 U.S.C. § 2339B case) (finding that a defendant poses a risk of harm to the community where he is "charged with attempting to join the most violent terrorist organization, ISIS"); United States v. Salkicevic, No. 15-CR-0060, 2015 WL

7

525556, at *2 (N.D. Ill. Feb. 10, 2015) (18 U.S.C. § 2339A case) (finding that, where a defendant is charged with conspiring to provide material support and resources to ISIS, the charged offense "could scarcely be more serious").

The evidence further demonstrates that, after leaving the United States in 2013 and successfully traveling to Turkey and then Syria, the defendant was a committed ISIS partisan.  He carried a firearm in service of ISIS, he trained ISIS's fighters, he threatened ISIS's perceived enemies, he celebrated ISIS's victories, and he recruited others to ISIS's cause.  The government's evidence of this conduct is overwhelming and includes, in part: (i) the defendant's own admissions; (ii) photographs and messages from the defendant's various Internet-based accounts documenting his relationship with the CI and others; and (iii) airline and hotel stay records documenting the defendant's travel to the Middle East.  Through his support of ISIS, the defendant poses a risk of harm to the United States and to civilians abroad.  See Salkicevic, 2015 WL 525556, at *2 (consideration of safety of the community "can, of course, include foreign communities"); see also Farah, 2015 WL 2353075, at *4 (finding dangerousness because there would be harm to the wider community of civilians in the Middle East if the defendant were successful).

III.   The Defendant Poses a Risk of Flight

The defendant is also a flight risk as evidenced by his lengthy residency overseas in service of ISIS, and his proven ability to leave the United States and travel to a hostile combat zone from which extraction could prove difficult.  See Farah, 2015 WL 2353075, at *4 (finding that a defendant poses a risk of flight where part of the offense conduct involves attempting to travel overseas to join a terrorist organization).  He has language fluency in both English and Russian and his foreign ties are substantial—he has ties

8

with his birth country of Kazakhstan and presumably has contacts from his multi-year residency in Turkey and Syria—which offer him many avenues of egress were he to attempt to flee if released on bond.

    Moreover, the defendant now faces a significant prison term.  If convicted of the charge in the Complaint, the defendant faces a maximum term of 20 years imprisonment and a Guidelines range of the same: 20 years.  Moreover, when the government indicts this case, the government anticipates that it will seek additional charges to reflect the full scope of the defendant's offense conduct.  The penalty for each such charge could run consecutively to any term of imprisonment imposed in connection with the charge set forth in the Complaint.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court order the defendant to be detained permanently pending trial, as there is no condition or combination of conditions that could reasonably assure the safety of the community or the defendant's appearance at trial.

Dated: Brooklyn, New York
      July 19, 2019

                                            Respectfully submitted,

                                            RICHARD P. DONOGHUE
                                            United States Attorney

                            By:    /s/
                                            Douglas M. Pravda
                                            Saritha Komatireddy
                                            J. Matthew Haggans
                                            Assistant U.S. Attorneys
                                            (718) 254-7000

cc:    Clerk of Court (By ECF)
        Defense Counsel (By Email)